# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**BARBARA BARLOW,**

    **Plaintiff,**

v.                                                Case No. 8:11-cv-71-T-30EAJ

**WALGREEN CO.,**

    **Defendant.**

_____/

## **ORDER**

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 19), and Plaintiff's Response in Opposition (Dkt. 31). The Court, having considered the motion, response, and being otherwise advised in the premises, concludes that the motion should be denied in part, and granted in part, as stated herein.

### Background

Plaintiff Barbara Barlow ("Barlow") contends that Defendant Walgreen Co. ("Walgreen") both discriminated against her on account of her disability and retaliated against her in violation of the Americans with Disabilities Act of 1990, as amended, and the Florida Civil Rights Act.

Plaintiff Barlow suffers from the musculoskelatal disorders of spinal stenosis,[1] cervical disc disease, neural foraminal stenosis, and cervical radiculopathy. As a result of

---

[1] A narrowing of the spine that puts pressure on the spinal cord and nerves, causing pain.

her conditions, Barlow has difficulty with heavy lifting, heavy pulling, and prolonged bending or stooping as such activities cause severe pain and muscle tightness in her upper back. Plaintiff can perform light lifting, and bend and stoop for short periods of time.

Barlow started working for Walgreen in October, 1995, and proceeded to work at Walgreen for the next 14 years. For the past seven years, Barlow has worked as a senior beauty advisor ("SBA"). As an SBA, Barlow was responsible for overseeing all aspects of the Walgreen cosmetics department. Her responsibilities included, among other things: (1) providing assistance to customers in the cosmetics department; (2) "coordinating, constructing, and maintaining Cosmetic Department displays, to include mandatory, promotional, seasonal, and sale merchandise displays in a timely, clean, and neat fashion;" (3) performing resets and revisions; (4) keeping counters and shelves clean and well-merchandised; (5) operating the cash register in the cosmetics department; (6) generally keeping track of cosmetic merchandise; and (7) ordering new cosmetic merchandise. As the senior beauty advisor, Barlow also supervised beauty advisors ("BAs") in their duties.

Plaintiff's impairments made it difficult for her to perform some of her duties. First, she had difficulty unloading merchandise on "truck days." On "truck days," which occurred approximately once to twice per week, a truck delivered merchandise to Walgreen in "totes," which are plastic boxes weighing approximately two pounds when empty and up to fifty pounds when filled. Walgreen employees would typically transport the totes into their section by lifting the totes onto a cart and then wheeling the cart into their section. Although Barlow could lift the lighter totes onto the cart, transport the cart from the stockroom to her

department, place the products on the shelves, and return the cart when she was finished, she experienced difficulty lifting the heavier totes onto the cart.

When presented with a heavier tote, Barlow would ask for assistance if other employees happened to be around. If there was no one available to help, Barlow would work with the lighter totes until someone became available, take the individual items out of the heavy tote and place them on the cart, and/or simply lift the heavy tote herself regardless of the pain. According to Barlow, she performed her duties on truck days in the above-described manner for many years without any disruption in the workplace.

Second, Plaintiff experienced some difficulty performing resets and revisions. A revision involves merchandise relocation of a relatively minor nature, for example, moving one brand of merchandise from one shelf to another. A reset, by contrast, is a large-scale "face-lift" of a department, taking place approximately once a year to every couple of months.[2] In moving merchandise from one shelf to another in furtherance of a revision or a reset, Barlow had difficulty relocating merchandise on the very bottom shelf, as she would experience intense pain from crouching for long periods of time. As a result, Barlow typically had the BAs she supervised re-stock the bottom shelf. According to Plaintiff, it was not uncommon for cosmetic employees to ask for help completing a reset, and/or a revision, and there was no requirement that an SBA or a BA complete an entire reset or revision on his or her shift. Indeed, doing so was often not possible due to customer volume.

---

[2]The parties appear to disagree whether the term 'revision' or 'reset' should apply to the relatively modest merchandise relocation or to the more wholesale reorganization (and vice-versa). The correct usage of these two terms, however, is immaterial for the purposes of this Order.

Third, Plaintiff had difficulty lifting heavy merchandise for customers. For example, if customers purchased a gallon of milk, or a twelve-pack of bottled water, Barlow would be unable to pick up these items in order to place them into a bag. Instead, she would slide the merchandise into the bag, and/or reach out with her scanner to ring up these items.[3]

Despite Plaintiff's limitations, she received high marks from her coworkers and supervisors for many years, being described as a good and capable employee, and a hard worker who did her job without complaining. Indeed, in her March 17, 2009, performance review her then-supervisor (and store manager) Darrell Foust rated Barlow at the highest possible rating of "exceeds expectations" in ten out of eleven categories (she received a "meets expectations" rating in the remaining category). Foust had supervised Barlow in her role as SBA for the previous three years, and, significantly, specifically listed "resets and revisions" as one of Barlow's strengths.

It seems that Plaintiff's problems at work only started after Diane Campogni took over as store manager on September 1, 2009. Soon after Campogni became manager, Campogni informed Barlow that she would have to start working evening shifts, and that during those shifts she would have to perform the janitorial duties which were previously performed by the overnight assistant manager. Barlow informed Campogni that because of her conditions it would be difficult for her to lift the heavy industrial mop, and/or the heavy trash can lids.

Campogni understood Plaintiff to be requesting an accommodation, so she insisted that Plaintiff provide her with a doctor's note, detailing her limitations. Barlow explained

---

[3]Plaintiff also allegedly had additional, more minor, work limitations due to her impairments.

the situation to her doctor and proceeded to get a note, which she subsequently gave to Campogni. The note, in relevant part, stated:

> Barbara is in need of slight assistance in her work duties/details. She is medically able to work but Heavy Lifting, Heavy Pushing, or Heavy Pulling will aggravate her Cervical Musculature Disorder. Also Bending Over or Stooping can only be done for short periods of time. If these activities persist she suffers from severe pain and muscle tightness of the upper back (cervical and thoracic). These symptoms result from her medical conditions...Barbara has been a good patient and I believe she is a hard worker who wants to remain employed and work but is struggling medically with her current duties. Please help her to find some solution to these issues. I would be glad to speak on her behalf at the numbers listed below.

Upon receiving the letter, Campogni stated that the note was not good enough and dismissed it, arguing that it insufficiently explained Plaintiff's limitations. Campogni requested that Plaintiff obtain additional information from her doctor, but declined to accept Dr. Kappeler's invitation to speak with him about Plaintiff's impairments because Campogni was "not required" to do so.

Around this time, Campogni brought Barlow into her office and asked Barlow to make a list of her physical limitations. Barlow proceeded to do so. For example, she wrote "can't lift a gallon of milk [but] would slide [it] into the bag." Campogni allegedly became angry over Barlow's qualifying her limitations in this way, and, as a result, threw Barlow's initial list into the trash. Thereafter, Barlow simply wrote what Campogni told her to write.

Upon detailing her limitations, Campogni remarked that Barlow was "obviously disabled," and, as she would be a liability to Walgreen, she would no longer be allowed to

work in the store. Accordingly, Campogni removed Barlow from the schedule and told her to apply for disability benefits.

Although Barlow originally filed a disability claim pursuant to Campogni's instructions, she later withdrew her claim as she considers herself capable of doing the work and not to be disabled (Barlow states that she views a disabled individual as a person without arms and legs). Because Campogni refused to schedule Barlow for work, Barlow decided to withdraw funds from her Walgreen profit sharing account. As she could not do so unless she was coded as retired, Barlow agreed to be classified as retired, and received the funds.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Chelates*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49. This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a question for the fact finder. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## Discussion

**I.    Plaintiff's Disability Discrimination Claims**

Both parties agree that, since the alleged discriminatory conduct in this case took place *after* January 1, 2009, the American with Disabilities Act Amendments Act of 2008 ("ADAAA") applies. 42 U.S.C. § 12112. The ADAAA amended the ADA to, among other

things, promulgate a more liberal standard of the term "disabled," making it significantly easier for a plaintiff to show disability. Indeed, the new regulations state that:

> The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of 'disability' in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. 29 C.F.R. § 1630.1 (c)(4).

Despite the changes brought about by the ADAAA, the elements of a plaintiff's prima facie case remain the same. Specifically, a plaintiff must show that: (1) she is disabled; (2) is a qualified individual; and (3) was unlawfully discriminated against because of her disability. *Greenberg v. BellSouth Telecomm., Inc.,* 498 F.3d 1258, 1263 (11th Cir. 2000) (citations omitted); *McCoy v. Geico Gen. Ins. Co.,* 510 F.Supp.2d 739, 748 (M.D. Fla. 2007).[4] Walgreen argues that Plaintiff fails to meet each of these three elements.

### A.   Is Plaintiff Disabled?

Under the ADAAA, a disability is defined as, among other things, a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g)(1)(I). An impairment qualifies as a disability if:

> it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. 29 C.F.R. § 1630.2(j)(1)(ii).

---

[4] Moreover, as the Florida Civil Rights Act ("FCRA") is construed in conformity with the ADA, as amended, the Court will discuss the claims asserted under these two statutes together. *See, e.g., Smith v. Avatar Properties, Inc.,* 714 So.2d 1103, 1106 (Fla. 5th DCA 1998).

The new regulations go on to explain that the term "substantially limits" is to be broadly construed "in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(I).  Major life activities are defined as, among other things, "performing manual tasks...walking, standing, sitting, reaching, *lifting, bending,* ...working...[and the] operation of a major bodily function, including... the...*musculoskeletal*" function.  29  C.F.R. § 1630.2(I) (emphasis added).

Here, Plaintiff argues that she suffers from physical disabilities which limit one of her major life activities.  Specifically, she contends that her impairments of spinal stenosis, cervical disc disease, neural foraminal stenosis, and cervical radiculopathy, substantially limit her major life activity of the operation of her musculoskeletal system.

Plaintiff's impairments all undisputedly affect her musculoskeletal function.  The fact that her disorders cause her to have great difficulty lifting even relatively light objects such as a gallon of milk, and that she has great difficulty crouching for more than short periods of time both testify to the seriousness of her musculoskeletal problems.  Her impairments put her at a disadvantage as compared to "most people in the general population," and certainly qualify as a significant restriction.  As the new regulations do not even require that the limitation be "significant or severe," taking Plaintiff's allegations as true, Plaintiff's impairments substantially limit her musculoskeletal system; thus, Plaintiff qualifies as disabled under the ADAAA.  *See* 29 CFR § 1630.2(i)(1)(ii), (j)(1)(ii).

Defendant argues that Barlow is not disabled, even under the more lenient standards of the ADAAA.  Defendant contends that Plaintiff has never stated that she was in any way

disabled, and thus cannot be thought to be disabled under the ADAAA. While Plaintiff disavows that she is "disabled" and that she is fully capable of doing her work, such statements are not tantamount to stating that she does not suffer from a *legally recognized* disability. Indeed, according to Plaintiff she did not consider herself disabled because she believes that disabled persons are people without arms and legs. While Plaintiff has declined to label herself as disabled, she has stated that she suffers from the various musculoskeletal disorders described herein, and has repeatedly detailed her consequent physical limitations resulting therefrom. As such, taking Plaintiff's allegations as true, she is qualified as disabled under the ADAAA for the reasons discussed above.

Moreover, Plaintiff has also presented sufficient evidence to create a genuine issue of material fact with respect to whether she qualifies as disabled under the "regarded as" prong of the ADAAA, which prohibits employers from discriminating against those employees which they perceive to have a disability. *See* 42 U.S.C. § 12102(1)(c); 29 C.F.R. § 1630.2(g)(1)(iii). Among other things, Plaintiff presents evidence that Campogni specifically told Plaintiff that she could no longer work for Walgreen because she was disabled, and therefore a liability to Walgreen.

### B.     Is Plaintiff a Qualified Individual?

Whether Plaintiff is a "qualified individual" under the ADAAA turns on the question of whether she is able to perform the essential functions of her job with or without reasonable accommodation. 42 U.S.C. §12111(8). Here, Plaintiff has impairments which make Plaintiff unable to perform mildly heavy lifting, heavy pushing and pulling, and prolonged bending

or stooping. Thus, whether Plaintiff is a qualified individual turns on the question of whether these physical tasks are essential functions of Plaintiff's position.

A job duty may constitute an essential function if, among other things: "(i) ...the reason the position exists is to perform that function;" (ii) the job function cannot easily be distributed among other employees; and/or (iii) the job duty is highly specialized, the employee being specifically hired to perform that particular function. 29 C.F.R. § 1630.2 (n)(2).

Here, the SBA position is undisputedly not a specialized position, so prong (iii) is inapplicable. Defendant argues that lifting and crouching constitute essential functions under prong (ii) as Walgreen is unable to distribute the duties Plaintiff cannot perform to other workers. Plaintiff, however, has ample evidence to contradict this assertion. Indeed, Plaintiff contends that numerous Walgreen employees were available to (and did) help her with the limited tasks she could not perform, and/or had difficulty performing.

Defendant also argues that bending and lifting constituted essential functions under the first prong, arguing that the reason that the SBA position exists is to perform certain functions which importantly include, among other things, the tasks of heavy lifting and sustained crouching.

In order to determine if these job duties were indeed essential functions, a Court may consider as evidence, among other things: "(i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv)

the consequences of not requiring the incumbent to perform the function" and the past work experience of Plaintiff, and others, on the job. 29 C.F.R. § 1630.2 (n)(3); *Calvo v. Walgreen Corp.,* 340 Fed. Appx. 618, 623 (11th Cir. 2009).

Here, Defendant argues, among other things, that Campogni considered bending and lifting to be essential job duties, that Defendant's written job description required such duties, that Campogni actually required Plaintiff to perform these functions, that Plaintiff was required to devote a significant amount of time to performing such duties, and that eliminating these duties would fundamentally alter the SBA position.

While Defendant has presented significant evidence tending to show that lifting and bending were essential job duties, Plaintiff has presented ample evidence to the contrary. Indeed, taking Plaintiff's evidence as true, a reasonable juror could certainly conclude that lifting and bending constituted merely marginal duties of the job. Among other things, Plaintiff presents evidence that her former boss had found that she had exceeded expectations in her role as an SBA, that she worked as an SBA for years without problems, that her limitations did not disrupt customer service, that many employees were available to assist her in the few tasks she could not perform herself, and that others who had similarly asked for help with lifting had been accommodated.

In short, Plaintiff's evidence gives rise to a genuine issue of material fact as to whether such tasks were essential. Indeed, the recent Eleventh Circuit case of *Calvo v. Walgreen Corporation,* 2009 WL 2435700 (11th Cir. Aug. 11), is in accord. In *Calvo,* the court reversed a district court's grant of summary judgment for Walgreen on plaintiff's ADA

claim, finding there was a genuine issue of material fact as to whether lifting and carrying were essential functions of the Walgreen' assistant manager position. *Id.* at *4, *7. Of note, the court found that the fact that one of the Calvo's supervisors had stated that Calvo had performed the job "fine" for a period of four years belied Walgreen' contention that lifting and carrying were essential job duties. *Id.* at *4.

### C.   Did Walgreen Discriminate against Plaintiff?

Plaintiff argues that Walgreen discriminated against her by removing her from the schedule because of her disability, instead of offering her a reasonable accommodation. Plaintiff contends that she could perform the essential duties of her job, and that Walgreen could have offered her a reasonable accommodation by offering her slight assistance with the difficulties that she had lifting heavier objects, just as it had in the past.

Walgreen contends that the lifting duties were essential functions of the SBA position, and that, as a result, Walgreen had no duty to reassign them.  While Walgreen is correct in its contention that an employer has no duty to reassign essential duties, for the reasons discussed above, there exists a dispute of material fact as to whether the SBA lifting (and bending) duties were essential functions of that position.  Accordingly, it is not appropriate to rule on summary judgment on this issue.

Moreover, as there exists a genuine issue of material fact with respect to all three elements of Plaintiff's disability discrimination claim, Plaintiff's claim survives summary judgment.

## II. Plaintiff's Retaliation Claims

In order to bring a disability retaliation claim, a plaintiff must first exhaust her administrative remedies by filing a charge of retaliatory discrimination with the EEOC. *Green v. Elixir Industries, Inc.,* 152 F. App'x 838, 840 (11th Cir. 2005); *Thomas v. Miami Dade Public Health Trust,* 369 F. App'x 19, 22 (11th Cir. 2010) (noting that any "acts of retaliation that occurred prior to the date of the EEOC charge that were not included in the charge were not exhausted and could not be considered by the district court.")

Here, Plaintiff both failed to check the retaliation box, and failed to raise any allegation of retaliation in her EEOC charge. As a result, Plaintiff's retaliation charges are administratively barred. Notably, in Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff presents no argument as to why these charges should not be barred.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant Walgreen Co.'s Motion for Summary Judgment (Dkt. 19) is hereby denied with respect to Plaintiff Barbara Barlow's disability discrimination claims (Counts I & II).

2.      Defendant Walgreen Co.'s Motion for Summary Judgment (Dkt. 19) is hereby granted with respect to Plaintiff Barbara Barlow's retaliation claims (Counts III & IV).

**DONE** and **ORDERED** in Tampa, Florida on March 14, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2011\11-cv-71.msj.19.frm